ASSOCIATED INDUSTRIES OF NEW YORK STATE, INC., Plaintiff, *v.* THE DEPARTMENT OF LABOR OF THE STATE OF NEW YORK and ELMER F. ANDREWS, as Industrial Commissioner of the State of New York, and Others, Defendants.*

Supreme Court, Special Term, Albany County, March 14, 1936.

* Revd., 271 N. Y. 1. See, also, *Chamberlin, Inc.*, v. *Andrews*, 159 Misc. 124.

*Kenefick, Cooke, Mitchell, Bass & Letchworth [James McCormick Mitchell* of counsel], for the plaintiff.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor General, John F. X. McGohey, John C. Crary* and *Colin McLennon* of counsel], for the defendants.

RUSSELL, J.   Plaintiff applies on the pleadings for a declaratory judgment decreeing that the provisions of article 18, sections 500–531, of the Labor Law (as added by chapter 468 of the Laws of 1935) are invalid, unconstitutional and void and as consequential relief that the defendants be restrained from enforcing said law against the plaintiff herein.

The sole question presented for decision on this application is the constitutionality of the New York Unemployment Insurance Law.   The validity of this law must be tested by the legislative power to enact and through that power to enforce it, without violation of the constitutional guaranty that the plaintiff be not deprived of its property without due process of law, denied the equal protection of the law or be not deprived of its right and liberty of contract.

This statute requires the payment by employers, beginning March 1, 1936, of contributions equal to three percentum of the payrolls of employees, except in 1936 the contributions shall be one percentum and in 1937 the contributions shall be two percentum, in all employments, except those expressly excepted, by those who employ at least four persons.   These contributions upon collection shall be deposited

in or invested in the obligations of the "Unemployment Trust Fund" of the United States government or its authorized agent, subject to requisition by the State Commissioner of necessary amounts from time to time.

No contributions are required from the employees who may be entitled to benefits thereunder and none are contributed by the public treasury of this State.

No agreement by an employee to pay any portion of the contribution shall be valid and no deduction from the wages of any employee for such purpose shall be made.

Benefits from this fund shall become payable March 1, 1938, to each employee then unemployed who (a) is suffering total unemployment as defined in the article, and (b) has, as provided therein, registered as totally unemployed and reported for work or otherwise given notice of the continuance of his unemployment, and (c) has had not less than ninety days of employment as defined in the article within the twelve months preceding the day on which benefits are to commence, and (d) in no case shall the fund be liable to pay benefits to an employee for any unemployment occurring more than twelve months after the date on which such employee was in employment.

The fund shall pay benefits to employees in the ratio of one week of benefit for each fifteen days of employment within the fifty-two weeks preceding the beginning of the payment of benefits.

Benefits are available under this statute on account of unemployment which continues subsequent to a waiting period of at least three weeks after notification of unemployment. After a waiting period of ten weeks, benefits shall be available to an employee even though he lost his employment through misconduct or because of a strike, lockout or other industrial controversy in the establishment in which he was employed.

No benefits shall be payable to any employee who refuses to accept an offer of employment for which he is reasonably fitted, provided benefits shall not be lost by reason of refusal to accept employment if required to join a company union or such employment would interfere with his joining or retaining membership in any labor organization or where employment is offered where there is a strike, lockout or other industrial controversy, or where employment is not within the State or at a reasonable distance from his residence, unless an expense greater than that required in his former employment is provided, or where wages, hours and conditions offered are substantially less favorable than those prevailing for similar work in the locality or are such as tend to depress wages or working conditions.

The benefits payable on account of total unemployment after the waiting period shall be at the rate of fifty percentum of full time weekly wages, not exceeding fifteen dollars nor less than five dollars per week. The total benefits in any consecutive fifty-two weeks shall not exceed sixteen times the employee's benefit for one week of total unemployment.

Benefits under this statute are, therefore, available, after varying waiting periods without employment, without regard to the cause of such unemployment, whether voluntary, due to misconduct or strike, even though other employment is available but comes within the exceptions stated above and even though financial assistance is not a necessity for the employee.

A certain limited class of employers are required, under this statute, to make a compulsory contribution to a single pooled fund out of which certain benefits are to be paid to a limited class of unemployed employees. This contribution is required under the law independent of the existence of any unemployed employees in the business of the contributing employer and independent of a benefit therefrom ever going to one of the employees of such employer.

This single pooled fund upon collection is deposited with the Secretary of the Treasury, who is charged with the duty of administration, investment and payment to the State agency upon requisition.

A similar duty is prescribed for the Secretary of the Treasury in the Federal Social Security Act, which was approved by the President on August 14, 1935 (49 U. S. Stat. at Large, 620). This act among other things sets up the " Unemployment Trust Fund " and provides that the fund " shall be invested as a single fund." It imposes a Federal tax for the purpose of unemployment benefits and other benefits provided in this law upon payrolls of employers of eight or more employees at rates in the same amount and time of payment as is provided in the New York State law, and provides a credit against such tax not to exceed ninety per cent of contributions made under State laws.

An appropriation of Federal funds " for the purpose of assisting the States in the administration of their unemployment compensation laws " of $4,000,000 is made for the fiscal year 1936 and of $49,000,000 each year thereafter. Payments from these appropriations shall be made by the Secretary of the Treasury, when certified by the Board, to such States which have an unemployment compensation law approved by the Social Security Board created in the Federal act.

The plaintiff is an employer under the terms of the Unemployment Insurance Act (Labor Law, § 502, subd. 3), and all material allegations of the complaint are admitted by the answer except those alleging unconstitutionality.

The plaintiff asserts that the Unemployment Insurance Law is unconstitutional because the necessary effect of its operation will be to deprive every employer subject to the law of his property without due process of law, in violation of the provisions of article 1, section 6, of the Constitution of the State of New York, and in in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States.

The issue is squarely presented as to whether a law which requires compulsory contributions by employers to a single fund for disbursement through a State agency to pay the benefits therein provided to unemployed employees can be sustained on any ground as a valid exercise of legislative power.

The power exercised by this enactment is not the taxing power. Mr. Justice ROBERTS in *United States* v. *Butler* (296 U. S. 561; 56 Sup. Ct. 312, at p. 317) said: "A tax, in the general understanding of the term, and as used in the Constitution, signifies an exaction for the support of the government. The word has never been thought to connote the expropriation of money from one group for the benefit of another."

The Legislature in the enactment of the Unemployment Insurance Law declared in section 500, as a guide for the interpretation of the law, that the public policy of the State was as follows: " economic insecurity due to unemployment is a serious menace to the health, welfare and morals of the people of this State."

Such declaration indicates the intent of the statute to be an exercise of the police power. The rights of citizens may be limited and regulated and in some instances a citizen may be deprived of property for public welfare by an exercise of the police power, but such exercise must be reasonable and not arbitrary, and the burden cannot be oppressive and must have some regard in the relation of cause and effect between those upon whom the burden is imposed and the conditions or evil sought to be remedied or alleviated.

The defendants contend that industry creates unemployment and that its evils inhere in industry as a whole and that it is reasonable that the cost of mitigating them should be borne by industry in the first instance. I do not agree with the premise that unemployment is caused by the omission of any legal duty or the commission of any wrong by industry as such or that the burden to maintain a condition of employment is one that industry assumes and must discharge.

Forces far beyond the control of industry or business have created and perhaps always will create conditions of unemployment and those forces include numerous elements. Industry lives and thrives on employment of its workers. It dries up and dies when its condition precludes the employment of workers, and when it is so burdened by exactions that its condition demands such preclusion then loss and misfortune follow both to it and its employees.

In *People ex rel. Tipaldo* v. *Morehead* (270 N. Y. 233), and which involved the minimum wage law for women, Judge CRANE said: " The interpretation of the Federal Constitution by the United States Supreme Court is binding upon us; we are in duty bound to follow its decisions unless they are inapplicable."

The most recent decision by the Supreme Court of the United States which has application in principle to this case is *Railroad Retirement Board* v. *Alton R. R. Co.* (295 U. S. 330), involving an act of Congress establishing a compulsory retirement and pension system of carriers subject to the Interstate Commerce Act.

The Retirement and Pension Act of Congress and the State Unemployment Insurance Act are similar in their main features and machinery of operation, although the objective of one was retirement and pension benefits and of the other unemployment benefits.

Each of these statutes provide for a single pooled fund; the Federal statute provides for benefits from contributions by employee and employer; the State statute is limited to contributions by employers; the Federal statute treats all carriers as a single employer; the State statute treats all employers within the statutory class as a single employer; benefits under each are established at a fixed rate and contributions by employers are at a disparate rate; solvent carriers contribute for employees of insolvent carriers and those who cease operation under the Federal statute, and under the State statute solvent employers contribute towards the benefits of unemployed employees of insolvent employers and those who have gone out of business; the Federal statute deals with employers subject to statutory regulation and conducting a business affected with a public interest; the State statute deals with all employers coming within the statutory class in number of employees whether engaged in a business of public interest or engaged in any commercial enterprise; each statute provides benefits to discharged employees and each provides benefits without regard to need for financial assistance and each imposes a new burden upon the employer as an incident of the relation of employer and employee; each requires contributions to a single fund without regard to the need or certainty of any benefit therefrom to employees of the contributor.

The Federal statute was held unconstitutional on the ground that it operated to deprive railroad employers of their property without due process of law and that the compulsory pension plan for railroad employees was not a regulation of interstate commerce.

Mr. Justice ROBERTS in the opinion said that the act denied due process of law by taking the property of one and bestowing it upon another, that there was no warrant to make such a transfer without compensation, and that the pooling of assets regardless of individual obligations and the varying conditions in the respective enterprises could not be justified as consistent with due process and that the provisions of the act could not be separated from its violation of the due process of law requirement of the Constitution.

Similarly, with the Unemployment Insurance Law of this State the very heart and essence of it is the validity of a legislative mandate upon employers to make a compulsory contribution to a single pool to be used for disbursement of benefits for unemployed employees of others unrelated by any obligation, real or fanciful, to the contributor as employer.

It is my opinion that the compulsory contribution by an employer to be paid as an unemployment benefit to an employee of another is without validity under our system of government and constitutes an unwarranted, unreasonable and arbitrary transfer of the property of one to another in violation of the due process clause of the Constitution. That principle is the basis of the decision of the Supreme Court of the United States in the *Railroad Retirement Board* case and as the courts of this State are bound to follow such decisions, in cases where its interpretation of the Constitution applies, then it is decisive upon the validity of the Unemployment Insurance Law of this State.

The cases bearing upon the constitutionality of the Workmen's Compensation Law are not authorities to sustain the validity of the Unemployment Insurance Law. Workmen's compensation deals with a direct relation between employer and employee. Its obligations imposed upon the employer, in the absence of fault or wrong, were sustained as valid requirements, after constitutional amendment in this State and by the Supreme Court in other cases, because the industries, inherent with hazard and risk to life and limb of employees, should sustain, as a legitimate cost of its operation, the burden of care, treatment and aid to the injured and compensation to those rendered dependent by deaths.

These cases and others referred to by the defendants sustain the imposition of a burden on those whose activities directly produce a public detriment. The theory of the defendants that a condition of unemployment is produced by the manner in which industry and

business as a whole is conducted is without foundation in fact. Industry and business cannot be held responsible for a state of unemployment caused by an unusual economic depression and cannot be penalized for its existence.

The widespread condition of unemployment and the menace of its continuance is undoubtedly a public evil and misfortune and creates a condition of social insecurity which is a matter of great public concern. Such a condition is not likely to improve by imposing burdens which tend to further extend its distressing consequences and which place the industries and business of this State at a great disadvantage in the field of competition with those from other States upon whom such burden is not imposed.

The action is one for a declaratory judgment. The demand for injunctive relief is in the nature of consequential relief on the basis of a judgment of unconstitutionality of the law.

Rule 212 of the Rules of Civil Practice, relating to declaratory judgments, provides: "If, in the opinion of the court, the parties should be left to relief by existing forms of action, or for other reasons, it may decline to pronounce a declaratory judgment, stating the grounds on which its discretion is so exercised." In the exercise of such discretion judgment may be entered herein decreeing and declaring that the provisions of article 18, sections 500–531, inclusive, of the Labor Law of this State are invalid, unconstitutional, illegal and void.

The consequential relief for an injunction restraining the defendants, or such of them as are now concerned with the administration of this law, as a matter of discretion under the rule should not be granted at this time for the reason that the constitutionality of this statute will in the very near future be passed upon by the Court of Appeals and if its unconstitutionality is sustained by that court the plaintiff herein will then have available, if necessary, such remedy in this action, or by existing forms of action, to secure injunctive relief. The present activities and obligations of those charged with the duty of administration will not thereby be subjected to interference until and unless the unconstitutionality of this statute is sustained by the Court of Appeals.

Submit order.